(Reap. Dec. 9726)

C. A. HAYNES & Co *v.* UNITED STATES

Entry Nos. 743095; 883139.

(Decided June 21, 1960)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the defendant.

LAWRENCE, Judge: The above-enumerated appeals for a reappraisement, consolidated for the purposes of trial and determination, present the question of the proper dutiable value of certain importations of printing type and brass rule from England.

Appraisement of the merchandise was made on the basis of foreign value of such merchandise, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, at the unit invoice prices, less 2½ per centum, plus cost of packing.

Plaintiff does not controvert foreign value as the proper basis but contends that such value is represented by the unit invoice prices, less 25 per centum.

The evidence presented by the parties hereto is entirely documentary. On behalf of plaintiff, there was received in evidence, as collective exhibit 1, two depositions of H. F. B. Stephenson of Stephenson, Blake & Co., Ltd., Caslon Letter Foundry, Sheffield 3, Yorkshire, England, together with several accompanying exhibits, and, as collective exhibit 1–A, the questions and answers contained in exhibit 1 in seriatim form. Defendant offered in evidence a certified report of a Treasury representative in London and a report of the appraiser of merchandise in London, both of which reports were addressed to the Commissioner of Customs in Washington and were accompanied by supporting documents. Said reports were received in evidence as defendant's collective exhibts A and B, respectively.

From the deposition of H. F. B. Stephenson (collective exhibit 1), it appears that he was the managing director of Stephenson Blake & Co., Ltd., of Sheffield, England, seller of the instant merchandise, at the time of exportation to the United States of the printing type and brass rule in issue. He stated that such merchandise was not freely offered for sale or sold to all purchasers in the United States without restriction during the pertinent period but that it was sold only to the

American Wood Type Manufacturing Co., which is its sole agent in the United States. He also stated that—

Type and brass rule were offered to all in England who wished to buy at such prices as were offered to the American Wood Type Manufacturing Company. The prices and quantities are set out in the price list marked Exhibit "A". In 1951 we made sales of £238,872 at that price. During the year 1951 we also sold to a small group of users the same type of merchandise, but because they bought in smaller quantities the price charged was higher. We have no exact record. The price charged for the type and brass rule was as per the price list. (See Exhibit "A.")

It was Stephenson's further statement that—

Discount to purchasers for home consumption in England are [sic] given to agents for re-sale. Extra discounts are also given to customers direct for large quantities. All customers get a cash discount. Customers buying very small quantities pay approximately ten per cent extra. They also get a discount. See the Card Fount Booklet. (See Exhibit 5.)

It is basic in reappraisement proceedings that the party attacking an appraised value has the twofold burden of proving the action of the appraiser to be erroneous and of establishing some other dutiable value as the proper one. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

The definition of foreign value, as contained in section 402(c) of the tariff act, as amended, *supra*, reads as follows—

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The record before the court in this case is lacking in evidence as to the usual wholesale quantities at which such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of the country of exportation at the time of shipment of the instant merchandise. As indicated above, there is the statement of plaintiff's witness, Stephenson, that "In 1951 we made sales of £238,872 at that price." There also is the testimony of the witness, Stephenson, that the type and brass rule was sold all over England, Ireland, Scotland, and Wales to approximately 10,000 customers, 50 per centum of which were in the Greater London area. There is no evidence, however, as to the various quantities sold to said customers from which could be deduced a finding of usual wholesale quantity.

In defendant's collective exhibit B, there appears the following:

Mr. Caslon informed me that the great bulk of the company's business in the home market consisted of sales less than £25 with no allowance for quantities. He stated that a complete analysis of the company's sales for any period would have to include all sales at both the Sheffield and London offices which would consist of a great many sales and would be time consuming and impracticable, without producing any different result than his own statement. When informed that this would result in an appraisement without any allowance for quantity he stated he was aware of this situation and was satisfied with this result, as he knew that the sales to favored clients and wholesalers were very few.

From the record before the court, it is apparent that plaintiff has failed in its burden of supplying an essential element of proof to overcome the presumption of correctness attaching to the value found by the appraiser.

On the record before the court, the following findings of fact are made—

1. The involved merchandise consists of printing type and brass rule exported from England.

2. Such merchandise was freely offered for sale for home consumption at unit invoice prices, less 2½ per centum, plus packing.

3. Such merchandise was not freely offered for sale for exportation to the United States at or about the time of the instant importations.

As conclusions of law, the court holds—

1. That foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, *supra*, is the proper basis of appraisement of the instant merchandise.

2. That said value is represented by the unit invoice prices, less 2½ per centum plus packing.

Judgment will be entered accordingly.